UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL G.,

                 Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

Case No. C18-5720JLR

ORDER REVERSING AND REMANDING DENIAL OF BENEFITS

## I. INTRODUCTION

Plaintiff Daniel G. seeks review of the denial of his application for supplemental security income and disability insurance benefits. (*See* Compl. (Dkt. # 3).) Plaintiff contends that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's symptom testimony, and (2) improperly evaluating the medical evidence. (Pl. Op. Br. (Dkt. # 19) at 1.) As discussed below, the court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520,

ORDER - 1

416.920, the ALJ found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since November 13, 2014, the alleged onset date. *See* 20 C.F.R §§ 404.1571-76, 416.971-76.
>
> **Step two:** Plaintiff has the following severe impairments: Degenerative disc disease with moderate lumbar changes, anxiety related disorders, and moderate level obesity. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> **Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.
>
> **Residual Functional Capacity ("RFC"):** Plaintiff can perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). He needs regular work hours and access to a bathroom at the work place for scheduled breaks. He cannot be subjected to unusual work stressors. He can engage in routine and perfunctory social interactions. He can take instructions from a supervisor and respond appropriately. He should not perform jobs that require higher level social interaction skills and/or being part of an intense collaborative project. He cannot do commercial driving.
>
> **Step four:** Plaintiff cannot perform past relevant work. *See* 20 C.F.R. §§ 404.1565, 416.965.
>
> **Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

(Admin. Record ("AR") (Dkt. # 9) at 24-40.) Based on these findings, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act ("Act"), from November 13, 2014, through the date of the ALJ's decision. (*Id.* at 40.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*See id.* at 1-4.)

//

ORDER - 2

## III. DISCUSSION

Plaintiff bears the burden of proving he is disabled within the meaning of the Act. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### A. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony

Plaintiff argues that the ALJ erred in rejecting his symptom testimony. (Pl. Op. Br. at 10-11.) Plaintiff focuses his argument on the ALJ's analysis of his testimony regarding his mental symptoms, so the court will do the same.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only

show that the impairment could have caused some degree of his symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step. (AR at 29.)

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found evidence of malingering here. (AR at 34-35.) Affirmative evidence of malingering—standing alone—can support an ALJ's rejection of the plaintiff's testimony. *See Brown v. Astrue*, 405 F. App'x 230, 232 (9th Cir. 2010) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996)); *Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2008) (The existence of "affirmative evidence suggesting malingering vitiates the clear and convincing standard of review") (internal quotation marks omitted). The ALJ noted that an emergency room doctor opined that Plaintiff was malingering to avoid incarceration after a DUI arrest. (AR at 34.) The doctor noted that Plaintiff put blood in his urine to support a false claim of kidney stones. (*Id.* at 34, 665.) Plaintiff further admitted that he lied to examining doctor Keith Krueger, Ph.D., about his

symptoms and actions during a psychological evaluation. (*Id.* at 34-35, 82, 90-93.) The ALJ reasonably interpreted this evidence in determining that Plaintiff exaggerated his symptoms, and did not err in discounting Plaintiff's testimony as a result.

In addition to evidence of malingering, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his mental impairments was "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 29.) The ALJ gave three reasons for this determination. First, the ALJ reasoned that Plaintiff's allegations were inconsistent with his treatment record, which showed that his symptoms were well-controlled by medication. (*Id.* at 31-34.) Second, the ALJ reasoned that Plaintiff's work-type activities were inconsistent with the severity of the symptoms he alleged. (*Id.* at 34.) Third, the ALJ reasoned that Plaintiff's testimony was inconsistent with the statements he made to his treatment providers. (*Id.* at 34-35.)

The ALJ's first two reasons fall short of clear and convincing. The overall treatment record does not clearly establish that Plaintiff's symptoms were well-controlled by medication, especially to the point where he could function in a work environment. *Cf. Garrison*, 759 F.3d at 1017 n.23 ("'There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . .'") (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)).

Similarly, Plaintiff's activities did not demonstrate that he could sustain work. The ALJ reasoned that Plaintiff's "mental health diagnosis appear[ed] to stem primarily from childhood issues, [but] he was able to work at substantial gainful activity in the

ORDER - 5

past." (AR at 34.) The record does not reveal when Plaintiff's impairments manifested, so the fact that his mental issues stemmed from childhood trauma does not convincingly justify rejecting his testimony.

The ALJ's third reason, however, withstands scrutiny. An ALJ may reject a claimant's symptom testimony when the claimant makes inconsistent statements concerning his symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ's reasoning overlaps with his finding that Plaintiff was malingering. (*See* AR at 34-35.) Plaintiff admitted lying to an examining psychologist about his mental symptoms. The ALJ was not obligated to believe that Plaintiff was telling the truth at the hearing given this fact, and thus did not err in rejecting Plaintiff's testimony on this basis.

Plaintiff has failed to show that the ALJ committed harmful error in rejecting Plaintiff's symptom testimony. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). Although the ALJ's analysis was not free from error, those errors do not undermine the validity of the ALJ's reasoning with respect to Plaintiff's malingering and inconsistent statements. The ALJ's errors were thus inconsequential to the outcome, and therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

**B.     The ALJ Partially Erred in Evaluating the Medical Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical evidence. (Pl. Op. Br. at 4-10.) In particular, Plaintiff argues that the ALJ erred in rejecting the medical

opinions of examining doctor Kimberly Wheeler, Ph.D., consulting doctor Faulder Colby, Ph.D., and treating doctor Minerva Arrienda, M.D. (*Id.*)

1. <u>The ALJ Did Not Harmfully Err in Rejecting Dr. Wheeler's Opinions</u>

Dr. Wheeler examined Plaintiff on October 18, 2016. (AR at 643-47.) Plaintiff reported to Dr. Wheeler that he had assaulted coworkers, fought gang members in prison, killed animals including pets, and killed a man in prison. (*Id.* at 643-44.) Dr. Wheeler noted that Plaintiff "became intensely angry" during the clinical interview, stating that he felt he was being interrogated. (*Id.* at 643.)

Dr. Wheeler opined that Plaintiff was markedly limited in his ability to understand, remember, and carry out detailed instructions; perform activities within a regular schedule and maintain attendance; and maintain appropriate behavior in a work setting. (*Id.* at 645.) Dr. Wheeler opined that Plaintiff was severely limited in his ability to adapt to routine changes in a work setting; communicate and perform effectively in a work setting; and complete a normal work day or week without interruptions from his psychologically-based symptoms. (*Id.*) Dr. Wheeler opined that Plaintiff was a "[s]everely disturbed gentleman" who "[c]omes across with a coiled intensity, that conveys a sense of being ready to fly into rage, aggressiveness, or abject panic." (*Id.* at 646.)

The ALJ gave Dr. Wheeler's opinions little weight. *Id.* at 36. The ALJ reasoned that Dr. Wheeler did not have an accurate picture of Plaintiff's overall health because she did not review his treatment record, Plaintiff gave different reports to Dr. Wheeler than

ORDER - 7

he did to his treatment providers, and Plaintiff's presentation on the day of Dr. Wheeler's examination differed from his presentation to his regular treatment providers. *Id.*

An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the opinion of an examining doctor when it is contradicted. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ's reasons here boil down to a determination that Dr. Wheeler's observations were inconsistent with the overall medical record. That is a valid reason to reject an examining doctor's opinions as long at the determination is supported by substantial evidence in the record. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ's primary concern was that Plaintiff reported assaultive behavior and animal cruelty that Plaintiff had not reported to his treating providers. (*See* AR at 36.) But Plaintiff reported to his treatment providers on multiple occasions that he had killed cats and other animals. (*See, e.g.*, *id.* at 411, 467, 470, 524, 898.) The ALJ's determination on this issue was thus not supported by substantial evidence in the record.

The ALJ's next concern was that Plaintiff presented differently to Dr. Wheeler than he had to his treatment providers. (*Id.* at 36.) Dr. Wheeler reported that Plaintiff was rocking in his chair and breathing heavily during the examination. (*Id.* at 36, 644.) He told Dr. Wheeler he always knew how many steps it would take to reach others in case he wanted to assault them. (*Id.* at 33, 644.) By contrast, the next day, Plaintiff presented to one of his treatment providers with a neutral mood, logical thought process,

ORDER - 8

appropriate judgment, and appropriate insight into his condition. (*Id.* at 36, 908.) The ALJ's conclusion here was a reasonable interpretation of the evidence, particularly in light of Plaintiff's admission that he had misrepresented his symptoms to another examining psychologist. (*Id.* at 36.)

Once again, although the ALJ's analysis was not without error, Plaintiff has failed to show harmful error. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407-09). The ALJ's error in finding that Plaintiff had not reported animal cruelty to other providers does not invalidate the ALJ's determination that Plaintiff presented differently to Dr. Wheeler than he did to his treatment providers. The error was thus inconsequential to the outcome, and therefore harmless. *See Molina*, 674 F.3d at 1115.

2. <u>The ALJ Did Not Harmfully Err in Rejecting Dr. Colby's Opinions</u>

Dr. Colby did not examine Plaintiff, but reviewed Dr. Krueger and Dr. Wheeler's reports. (*See* AR at 648-52.) Dr. Colby opined that Plaintiff's limitations were the same as those to which Dr. Wheeler had opined. (*See id.* at 649.)

The ALJ gave Dr. Colby's opinions little weight. (*Id.* at 36.) The ALJ rejected Dr. Colby's opinions "for the same reasons that Dr. Wheeler's evaluation is given little weight." (*Id.*)

The standard for rejecting the opinions of a non-examining doctor, although not well-defined, is lower than the standard necessary to reject the opinions of a treating or examining doctor: In general, an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*,

143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted). Because the ALJ met the higher standard applicable to Dr. Wheeler, and the ALJ relied on the same reasons for rejecting Dr. Colby's opinions, the ALJ did not err in rejecting Dr. Colby's opinions. *See supra* Part III.B.1.

### 3. The ALJ Harmfully Erred in Rejecting Dr. Arrienda's Opinions

Plaintiff's mental health counselor, Kathleen Bieker, submitted a medical source statement that was cosigned by Dr. Arrienda. (AR at 586-89.) The ALJ evaluated the opinions in that statement as those of Dr. Arrienda, so the court will do the same. (*See id.* at 37.) In that statement, Dr. Arrienda opined that Plaintiff had significant limitations in his abilities related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 586.)

The ALJ gave Dr. Arrienda's statement little weight. (*Id.* at 37.) The ALJ reasoned that Dr. Arrienda's opinions were inconsistent with her own treatment notes, and inconsistent with Plaintiff's activities during the alleged disability period. (*Id.*)

The ALJ's first reason for rejecting Dr. Arrienda's opinions—that they were inconsistent with her treatment notes—does not withstand scrutiny. The ALJ reasoned that Dr. Arrienda's opinions were inconsistent with the fact that her treatment records showed Plaintiff's medications worked well for him and his condition was stable. (*Id.* at 37.) But, as with his analysis of Plaintiff's testimony, the ALJ failed to acknowledge that improvement and stability do not necessarily equate to the ability to work. *See supra* Part III.A. Dr. Arrienda, as the treatment provider, was in the best position to evaluate the

ORDER - 10

extent to which Plaintiff's medications were working, and the ALJ did not adequately explain why Dr. Arrienda's interpretation of her own clinical findings was flawed. *See McAllister v. Sullivan*, 88 F.2d 599, 602 (9th Cir. 1989).

The ALJ's second reason for rejecting Dr. Arrienda's opinions—that they were inconsistent with Plaintiff's activities during the alleged disability period—also fails. The ALJ gave only a vague statement that Plaintiff's "activities that included doing work during his alleged period of disability" were inconsistent with Dr. Arrienda's opinions. (AR at 37.) The ALJ failed to identify what inconsistencies he was referring to, and the record does not reveal any obvious examples. The ALJ's analysis was thus too vague to support rejecting Dr. Arrienda's opinions.

Because the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Arrienda's opinions, he harmfully erred. The court cannot confidently conclude that the ALJ would have reached the same nondisability determination had he properly analyzed Dr. Arrienda's opinions, so the ALJ's errors must be deemed harmful. *See Molina*, 674 F.3d at 1116 (holding that "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonably ALJ, when fully crediting the [discounted evidence], could have reached a different disability determination").

**C.     The ALJ Erred in Evaluating Plaintiff's RFC**

Plaintiff argues that the ALJ erred in his RFC determination and hypothetical questions to the vocational expert because he failed to properly evaluate the evidence discussed above. (Pl. Op. Br. at 11-12.) Because the court has found that the ALJ erred

in evaluating Dr. Arrienda's opinions, the court agrees. An ALJ's RFC that does not properly account for all of the evidence is not supported by substantial evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

**D.     Scope of Remand**

Plaintiff asks the court to remand for an award of benefits. (Pl. Op. Br. at 2.) The court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1290). But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076. Even when all elements of the remand-for-benefits exception are met, the court maintains discretion to remand for further proceedings. *See Leon*, 880 F.3d at 1045 (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)).

The appropriate remedy here is to remand for further proceedings. Among other things, Plaintiff's admitted dishonesty to medical providers creates substantial ambiguity as to how to evaluate all of the medical evidence. The ALJ, not the court, must decide how to account for that fact and weigh the evidence. *See Andrews*, 53 F.3d at 1039.

On remand, the ALJ must reevaluate Dr. Arrienda's opinions and conduct further

proceedings as necessary to reevaluate the disability determination in light of this opinion.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 18th day of June, 2019.

JAMES L. ROBART
United States District Judge